The next case is number 221517, Jean Shea Boudreau v. JPMorgan Chase Bank, N.A. et al. At this time, would counsel for the appellant, Jean Boudreau, please introduce herself on the record to begin. My name is Jean Shea Boudreau, and I represent, I'm an attorney, and I represent Jean Shea Boudreau, the appellant, in this matter. Ms. Boudreau, you don't have to, but you're welcome to take off your mask when you're arguing, if you would prefer. Thank you. The appellant, Ms. Boudreau, requests that the Court reverse the decision of the judge specifically in May 2, 2022, order finding Florida law governs the contract and granting JPMorgan Chase motion to dismiss, and the June 14, 2022, judgment and memorandum granting Caliber and Shell Point's motions to dismiss. Boudreau complains that the Court erred in finding the contract is governed by Florida law and not Massachusetts law. The Court did not perform a choice of law analysis, but merely quoted section 16 of the Constitution, that the security instrument shall be governed by Federal law and the law of the jurisdiction in which the property is located. The Court held also that, in the Chase matter, that unless Ms. Boudreau shows the enforcement would be unreasonable and unjust, or the clause is invalid due to fraud overreaching a strong public policy, Boudreau made no showing. Boudreau disagrees that she did not make a showing of unreasonable and unjust finding. She did state under section 6 and identified substantial and significant contacts and relationships the parties have, such as her relationship to Massachusetts. She has been domiciled in Massachusetts her entire life. Financial issues were negotiated in Massachusetts. The mortgage was researched and found in Massachusetts. The mortgage was signed in Massachusetts, executed, and communications were made in Massachusetts. The Massachusetts Bank paid all the payments. The lenders all do business in Massachusetts, advertise mortgages in Massachusetts, and receive substantial revenue from residents of Massachusetts. Section 142 of the Massachusetts Court considers that a form selection clause would deprive resisting parties of their substantial rights otherwise available. Also, the claim is in contract, it is not in property rights. The restatement of conflict of interest, section 189, states that the law is different when it relates to contracts versus an interest in land, which the judge found. Section 189 states that the debt is the principal thing in the minds of the parties and the promise to repay the mortgage is an accessory to the debt. The significant relationship test is what should be used. Looking at the form selection clause also as permissive or mandatory, the Jacobson case states that you look at the venue and the jurisdiction. The Boland case, which I put in my brief, the general law is that when only jurisdiction is specified, as in Boudreaux's mortgage, the clause will generally not be enforced as exclusive without further language indicating the party's intent to make the jurisdiction exclusive. Under the Foster-Hurley case, the court did not agree with the word shall as used in the agreement as intended to preclude Foster from pursuing any other remedies. Massachusetts also has a strong public policy, which is one of the exceptions in the Inouye case that the judge looked at under Massachusetts laws 93A and under the statute of limitations. Under 93A, under Feeney, the courts allow companies that do business in Massachusetts with strong commitment to consumer claims, create a potential for countless customers without being an effective method to vindicate their statutory rights. Massachusetts has, in my opinion, strong 93A claims against Caliber and against Shell Point. I sent letters of 93A claim to both parties, three parties actually, and none responded within the 30 days. Ms. Boudreaux, what did Chase do that you're suing it for? What did they do after January of 2017? Chase Bank continued the foreclosure action against Boudreaux. What happened was when they were on the risk between 2008-2009, they added illegal lender placed insurance. There's kind of a trifecta involved in adding lender placed insurance. Now you're talking about 2008 or 2009, I'm focusing on period. If you apply Massachusetts law, the contract claim, as I understand it, there would be in your favor a five-year statute of limitations period. You filed suit, I believe it was in January of 2022? Yes. So going back five years prior to that, we'd be looking at prior to January of 2017. I think Chase makes the claim that from that day, there's nothing they did after that date that could give rise to a suit. Anything you've accused them of doing, they did prior to then. I'm trying to get your response to that. Okay. Through 2017, Chase continued appearing at the foreclosure action. There were many court cases. There were many appearances that Chase ... I flew down to Florida, I had to appear. They continued adding court costs. They continued adding attorney fees under Section 9 and Section 14 of the mortgage. All of these accumulated and they also started ... They added interest on top of all this. It's called additional debt under ... Excuse me, I have asthma and I took antihistamine. So it's called accumulated debt under Section 9 and Section 14, which shall bear interest per the mortgage. So not only were they charging for the attorney fees and the court costs during 2017, they also added this additional interest and fees and loan charges through 2017. All this accumulated into the mortgage, which Caliber then presented a loss mitigation and all of this accumulated debt, additional debt, was in that ... Was already added into by Chase through 2017. So it was additional debt that they kept adding through 2017, which they filed the foreclosure in 2013, which I'm claiming was illegal because it was also based on all the illegal lender-placed insurance. Before lender-placed insurance ... This applies to all three. Before lender-placed insurance is able to be placed on a mortgage, it's kind of like a trifecta. There is a condominium brider, Section G of the mortgage. Section G states that the association maintains hazard insurance on the property. And Section 3S says that the lender can't add insurance, and it also says under Section 5, because it's maintained by the association, Woodrow is exempt from this. So you're saying that the breach, by initiating the action, the breach and the consumer, the consumer, 2013 ... Well, they continued ... But the cause of action arose then? Right. But the interest continued on that additional debt through today. I'm following you. I have a different question I want to ask. The lender-placed insurance ... Yes. That you say was happening at least as late as 2016 or possibly 2017. Do I have that right? Not with Chase, but with Caliber and Shell Point. Yes. Okay. Got it. Yes. And all the insurers knew that the account association had this hazard insurance. I was not responsible to pay it. And what happened was under Section 3 of the mortgage, the lenders must and shall verify the current data, such as tax data from the tax department, such as insurance from the association, that there is hazard insurance. If they have a question under RESPA, they have to have a reasonable ... Section O of the mortgage, they have to have a reasonable basis to put lender-placed insurance, and they have to send two letters to the borrower. The three lenders did not follow any three of these procedures. They just kept adding and adding and adding, over $70,000 of first-place insurance. The incentive? Greed. Under Section 5 and Section 9 of the mortgage, under Section 5 is insurance. When insurance is added, it's called additional debt. It shall bear interest at the note rate. So it's adding all of this interest, all of this debt. So the base mortgage, I continued to pay, and this is borne out by the three Chase pay histories, Exhibit 5, that show I continued to pay it, but they added all this additional debt. So it accumulated to a point where Chase eventually filed a fault, then they filed a foreclosure. Then eventually Case ... You may finish your sentence. Go ahead. Then eventually Caliber and Shell Point also became lenders, and they did the exact same thing in the additional debt, kept incurring through the time Caliber offered a loss mitigation, but it was all on additional debt. So by the time that happened, I was owing over $600,000 versus my initial loan of $294,000. So, I guess I'm out of time. Thank you. Thank you, Counsel. At this time, would Counsel for the Caliber home loans introduce himself on the record to begin? Good morning, Your Honors. May it please the Court. My name is Martin Dungan. I'm Counsel for Appley's Caliber home loans and Shell Point, New Rez, DBA, Shell Point. The District Court correctly dismissed Ms. Boudreaux's claims against Caliber and Shell Florida law controlled, second, because the continuing wrong doctrine does not apply, and third, because the District Court applied the correct standard when it reviewed Ms. Boudreaux's complaint, focusing on that first issue as Ms. Boudreaux did. Florida law controlled the parties' agreement here. Let's put aside the law for a minute. She's saying that within the statute of limitations period, even under Florida, your client assessed certain added insurance coverage costs and then charged the interest on that. And as I understand it, the argument is that given the structure of that condominium, that property, your client had no right to impose those charges. What's your response to that? So there's multiple different charges at issue. The first one was allegedly by Caliber in 2016. The District Court noted that that probably would be barred by limitations, but even if it wasn't, the evidence attached to Ms. Boudreaux's complaint showed that that was refunded a couple of months later, which means no injury for a breach of contract claim. The second charge at issue occurred in 2018, and Ms. Boudreaux- As to that claim, the District Court pointed to a letter, didn't it? To make that determination, and the letter stated the next year. I apologize, which letter? The refund letter. Oh, yes. I believe it pointed to Exhibit 4, which was Ms. Boudreaux's Chapter 93A demands. And one of those mentioned that Caliber had agreed to refund it. And then there was a second purported charge in 2018 that was supposedly made, but Ms. Boudreaux alleged in her complaint that it was refunded when she provided- I'm sorry. Yeah, I was talking about the wrong one. But the 2000s you were about to get to, the 2017 one, the letter talks about monies owed from 17 to 18. I've had a little trouble determining whether there was a refund for the 17, $6,000. So as we understand it from the complaint, there was. And this is kind of the problem we've ran into with the complaint is there's a lot in it, and it's tough to track the chronology. But as we understand it, there is an allegation that the 2016 charge was improper. That was refunded as borne out by the Shell Point history. And then there was a second charge. It may have been confusion on dates within the complaint. But as we understand it, she's talking about an allegation of a charge that was in 2018 for the 17-18 tax period. And that lines up with the dates of, you do it for 2017 through 18 and then charge it in 18 for the payment. But that was also refunded, I believe, within a business day. There's one more allegation, which is against Shell Point. Now Shell Point's history, as the district court noted, did not reflect any LPI charges by Shell Point. What we understand Ms. Brode claim is that Shell Point could not charge her for escrow more than her taxes would be. And if it did charge her more in escrow, that must be LPI. That's what we understand her to be alleging. But that's not accurate. RESPA allows Shell Point and other servicers like Calaver, like Chase, to charge a borrower more than just the tax payments. Examples include incurring a deficiency, which occurred here. It was December of 2017. There was a deficiency on the account. You can also keep up to one-sixth cushion in excess of the anticipated disbursements. The escrow history showed that they never crossed that line. And when the evidence attached to the complaint showed the district court that the first LPI charge was refunded, the second one was refunded within a day, and then the third one never occurred based on that escrow history, it rightfully concluded that these allegations  Turning to my second point, the Continuing Wrong Doctrine has come up a couple times in the briefing, and addressing it briefly, addressing it briefly, the Continuing Wrong Doctrine is this doctrine that doesn't toll limitations, it doesn't redefine anything. All it does is say when a wrong occurs, that's when you measure it for the purposes of limitations. That's all this doctrine does. It has been recognized in Massachusetts, but in limited capacities, like nuisance, like trespass, but it hasn't been recognized in this breach of contract context. So to the extent that Massachusetts law applies, which obviously the contract says it doesn't, but to the extent that law applies, it doesn't apply to breach of contract, to LPI charges, that type of thing. So Continuing Wrong Doctrine doesn't have much bearing on this case. My final point was about the district court standard, and it relates to the LPI charges. Ms. Boudreau drew issue with the court's reliance on a lot of exhibits attached to her own complaint, exhibits that she attached to that complaint. This court considers it, and I quote, well settled, end quote, that trial courts may rely on the exhibits a plaintiff attaches to their complaint. There's no real dispute about that, absent it being a letter where the plaintiff says this letter is false and defamatory, a court may rely on exhibits. So the trial court did that correctly here. It noted LPI charges were refunded when they occurred, to the extent they weren't already barred by limitations, and then they never were reflected in the documents otherwise, and it correctly found that that doesn't state a plausible claim. So because Florida law controls, because the Continuing Wrong Doctrine does not apply, and because the district court applied the correct standard, we respectfully request this court affirm. Thank you. Thank you, counsel. At this time, if counsel for J.P. Morgan would introduce himself on the record to begin. Good morning, your honors. Attorney Kevin Polanski on behalf of the defendants, J.P. Morgan, and Chase Home Loans. I'm going to refer to both Chase entities as just Chase, if that's okay with the court. This court should affirm the lower court's granting of Chase's motion to dismiss on the basis that there are no viable claims under the statute of limitations. The last time Chase has held this loan or serviced it was prior to October 1st of 2014. For the period of 2008, 2009 to 2014, Chase assumed this loan from the receivership by the FDIC of WAMU, Washington Mutual, and serviced and owned that loan until October 1st, 2014, when it was sold and then later serviced by Caliber, later to be serviced by Shell Point. So all of the actions and allegations regarding Chase's activity in handling this loan occurred prior to October 1st, 2014. Under either Florida law or Massachusetts law, the statute of limitations would bar all of her claims for breach of contract, whether it be five or six years, five under Florida law, six under Massachusetts law, four years under any sort of negligence or fraud theory that she's posed under Florida law, three years under Massachusetts law. In addition, four years would govern if there's no statutory authority changing it under Florida law with respect to the negligent infliction of intentional distress, the accounting claims, and so forth. In a foreclosure proceeding, there reaches a point where there's a calculation of the deficiency by the lender. And when the deficiency was calculated and asserted here, did it include any charges for insurance? In 2013, it would have, yes. And so when the case was filed in Florida on a judicial foreclosure action by Chase, it was filed in 2013 asserting the deficiency. And those are noted in the plaintiff's complaint, outlining what she believed were inaccurate charges. And were those proper to assert in that 2013 deficiency calculation? We believe they were. We believe that all the charges that were filed in that 2013 action were proper. And if they weren't proper, the plaintiff here should have brought an action sooner. In fact, she did defend herself in that action, filing an answer in counterclaims, alleging improper amounts being calculated on the loan. She also asserted after the filing of that action, or served the 938 demand letter, outlining what she believed were improper amounts. And that was in 2013? It was. Was there a later calculation of the deficiency? More recent? Within the four-year period? Not performed by Chase. Chase, again, has not done a calculation since before October 1st, 2014. It's no longer held the note. It's no longer held the loan. The allegations in the complaint relate to Ms. Boudreaux sending letters to Chase asking for accounting. In 2015, they sent a letter with the accounting, the payment history. But since October 1st, 2014, Chase has not serviced this loan, has not accepted payments, has not assumed any loss of mitigation on this loan. All the actions after that point were taken by Caliber and then Shell Point. If there are no further questions, we would stand on our brief, rest on our brief. Thank you. Thank you. That concludes argument in this case.